THEODORE O. COLBURN & others *vs.* ANNA F. HODGDON & others.

Suffolk.   November 14, 1921. — March 22, 1922.

Present: RUGG, C. J., BRALEY, CROSBY, CARROLL, & JENNEY, JJ.

*Equity Pleading and Practice,* Master's report, Findings by judge.   *Contract,*
What constitutes, Consideration.   *Executor and Administrator.   Trust.   Evidence,* Presumptions and burden of proof, Inference.   *Fraud.   Mistake.   Equity
Jurisdiction,* To set aside deed.

Exceptions to findings of fact by a master in a suit in equity, in the absence of a
report of the evidence upon which the findings were based, must be overruled.

In a suit in equity to set aside an instrument in writing made for the purpose of
carrying out the provisions of a will, a finding of a master to whom the suit was
referred, that "The instrument in question, with the will annexed, was placed
in the hands of each plaintiff, full and fair opportunity was given to read the
same, and each apparently did so," was *held* to be a finding of fact; and it *also
was held* that the only rational inference to be drawn therefrom was that each
plaintiff actually read the instrument in question before signing, and that the
finding was not subject to the objection that it was argumentative.

An exception to the exclusion by a master hearing a suit in equity of a question
asked in cross-examination of a witness which assumes a fact which does not
appear in evidence must be overruled, especially where the materiality of the
question is not apparent on the record and it does not appear what answer
was expected.

A person who was executor of a will, which was made by a woman in 1914 and
was subscribed by a witness who previously had been convicted of a crime
and had served a sentence of imprisonment in State prison, after the will was
allowed procured from all the heirs at law and next of kin of the testatrix their
signatures to instruments in writing, which he also signed, conveying to him
all their right, title and interest in her estate in trust to carry out the provisions
of her will and assenting to his appointment as administrator of her estate.
*Held,* that

(1) In legal effect the trust instrument was a contract for a valuable consideration, the consideration being the undertaking of the defendant to carry out
the wishes of the testatrix as expressed in her will;

(2) No fiduciary relation in a legal sense existed by reason of the circumstance
that previously the defendant had been appointed executor of the will of the
testatrix.

A suit in equity to set aside the above described trust instrument because of mistake and fraud was referred to a master who filed a report which did not contain a report of all of the evidence.   The judge who heard the suit upon the

master's report found "That so far as it is a matter of fact, no fiduciary or confidential relation existed between the . . . [defendant] and the other parties to the deed of trust referred to in the bill" and ruled "that on the facts as found, the law raises no such relation." *Held,* that the finding so made was amply warranted by the findings reported by the master and that the ruling was correct.

The burden of proving the allegations of the bill in the above described suit, including an allegation .that a relation of trust and confidence existed between the parties, rested on the plaintiffs.

.It appeared from the master's report in the above described suit that, before the plaintiffs signed the instrument, the defendant told them that the will possibly was void by reason of the conviction and imprisonment of a subscribing witness and that, if the will did not stand, the property would be distributed among the plaintiffs, and that he referred them to his son who was present and who was a lawyer for answer to any question they might wish to ask. It further appeared that they were all intelligent and of mature age, had apparently read the instrument, knew of legacies to them under the will and signed the instrument in order that the wishes of the deceased might be carried out. *Held,* that

(1) The findings of the master negatived the contention that the instrument was procured by false and fraudulent representations of the defendant;

(2) The only reasonable inference from the findings of the master was that the plaintiffs knew or at least had full opportunity to know all the material facts necessary to enable them to decide whether they would become parties to the instrument or not.

It was contended by the plaintiffs in the above described suit that the defendant perpetrated a fraud upon the Probate Court by not disclosing to the court the incompetency of the subscribing witness. It did not appear that the defendant, the executor of the will, personally had anything to do with the probate of the will or appeared in court when it was allowed; nor did the record disclose whether the question of competency of the witness was brought to the attention of the judge. *Held,* that it could not be found that a fraud was practised on the court.

In a suit to set aside a deed of trust on the ground 'of alleged mistake of fact and fraud and fraudulent misrepresentations by the defendant to the plaintiffs, the master's report, upon which the suit was heard, failed to show that any fraud or false representations were made by the defendant to the plaintiffs or to any of them, there were no findings from which either rationally could be inferred and it did not appear that the defendant concealed any material facts by reason of which the plaintiffs were induced to sign the agreement. *Held,* that a final decree dismissing the bill must be affirmed.

BILL IN EQUITY, filed in the Superior Court on July 27, 1920, to set aside, on the ground of mistake, fraud and false representations, an instrument in writing executed by the plaintiffs conveying all their right, title and interest as heirs at law and next of kin of Nancy E. Colburn in her estate, both real and personal, to the defendant Andrew H. Hodgdon in trust to dispose thereof in accordance with the terms of her will, of which he was executor, and assenting to his appointment as administrator of her estate.

The suit was referred to a master, who filed a report containing findings, which, so far as material, are described in the opinion. The plaintiffs filed exceptions thereto and a motion to recommit the report which were heard by *Wait,* J., who denied the motion and by whose order an interlocutory decree was entered overruling the exceptions to the master's report and confirming the report. The plaintiffs' exceptions to the master's report, so far as material, and the findings of the judge are described in the opinion. Later by order of *Sanderson,* J., a final decree was entered dismissing the bill. The plaintiffs appealed from both the interlocutory and the final decree.

*A. N. Hunt,* (*J. W. Lund* with him,) for the plaintiffs.

*H. D. McLellan,* (*W. C. Hodgdon* with him,) for the defendants.

CROSBY, J. Nancy E. Colburn, an unmarried woman, died on March 8, 1919. An instrument purporting to be her last will was offered for probate in the Probate Court for the County of Norfolk by the defendant, Andrew H. Hodgdon, who was named as executor therein; and on April 2, 1919, it was proved and allowed as her last will and letters testamentary were issued to him. Thereafter, a question having arisen respecting the validity of the will because William F. Hill, one of the witnesses thereto, had been previously convicted of a crime which might have made him incompetent as such witness, all the heirs at law and next of kin of the testatrix and the husbands and wives respectively of those who were married entered into a written agreement under seal dated November 15, 1919, with the above named Andrew H. Hodgdon as trustee, by the terms whereof they sold, transferred and assigned to him as such trustee all their right, title and interest as heirs at law of Miss Colburn in and to all the real estate of which she was possessed at the time of her decease, and all their right, title and interest as her next of kin in and to any personal property belonging to her estate. The purpose of entering into the agreement as expressed therein is "to carry out the terms of the said instrument purporting to be the last will and testament of the said Nancy E. Colburn; and to the end that this may be accomplished we hereby assent to the appointment of the said Andrew H. Hodgdon as administrator of the estate of the said Nancy E. Colburn."

A petition brought by one of the defendants praying that the decree of the Probate Court allowing the will be revoked is pending

in that court. This bill in equity, as amended, is brought by six heirs at law and next of kin of the testatrix (in which the respective husbands and wives of each of those who are married join) against Anna F. Hodgdon and Mary E. G. Colburn, two other heirs at law and next of kin of the testatrix, and Andrew H. Hodgdon, husband of Anna, to set the agreement aside and have it declared null and void on the ground of mistake and because of fraud and of false representations, alleged to have been made to the plaintiffs by Andrew H. Hodgdon, who it is claimed occupied a position of trust and confidence toward them.

The case was referred to a master and the plaintiffs filed certain exceptions to his report, and also filed a motion to recommit. In the Superior Court the exceptions were overruled, the motion was denied, and an interlocutory decree was entered overruling the exceptions and confirming the report; thereafter a final decree was entered dismissing the bill with costs. From these decrees the plaintiffs appealed.

The master found that William F. Hill, one of the witnesses to the will, in 1894 was convicted in the Superior Court for the county of Norfolk of the embezzlement of $125 and sentenced to four years in the State prison; that his conviction was known to the executor and to Abbott Berkeley Colburn, one of the plaintiffs, before November 13, 1919. The master states that he is unable to say whether or not the other plaintiffs had knowledge of that fact before that date. He further found that "When Miss Colburn, the testatrix, died, the will was in the possession of said Hill, at whose office Dr. Hodgdon [the defendant Andrew H. Hodgdon] first saw it soon after her death. At that time Mr. Hill suggested that he would be glad to attend to the probate of the will, and he subsequently did so as attorney for Dr. Hodgdon, who petitioned for its allowance. At the time when he first saw the will, Dr. Hodgdon was not aware that Hill's conviction of said crime could affect the validity of the will. Some time after this, the exact date not appearing, but before the will was allowed, Dr. Hodgdon, in a talk with his son, Waldo C. Hodgdon, who was a lawyer, was informed for the first time that there was a possibility that Mr. Hill was incompetent as a witness to the will because of his conviction of a crime. Dr. Hodgdon did not communicate this information to the plaintiffs, and said nothing to any of them as to

the possible invalidity of the will, until November 13, 1919, as hereinafter stated. In fact it did not appear that before that date Dr. Hodgdon held any communication whatever with the plaintiffs from the time of Miss Colburn's death. His relations with them had never been close. With some of them he was personally acquainted, while to others he was a stranger except by repute.

"On March 14, 1919, Dr. Hodgdon petitioned the court for the allowance of the will. Mr. Hill, as Dr. Hodgdon's attorney, served upon all the heirs at law and next of kin the citation ordered by the court, directing them to appear and show cause why the will should not be allowed.

"On April 2, 1919, no objection to the probate of the will being made, it was allowed by the Probate Court on the testimony of Don Gleason Hill, Jr., one of the subscribing witnesses thereto, and Dr. Hodgdon was appointed executor, by a decree which remains in full force and effect. . . .

"Several months after the will was allowed Dr. Hodgdon again had a talk with his son Waldo on the subject of the validity of the will, and thereupon consulted said Hill, asking to be satisfied as to what the law was on the subject. In response to this request Dr. Hodgdon received from said Hill a letter . . . containing numerous quotations from various statutes bearing upon the question. Thereupon Dr. Hodgdon again consulted his son Waldo, who advised him that the provisions of St. 1918, c. 257, § 386, mentioned in the letter from Hill, had not gone into effect, and that even if that statute were in force, there was serious question whether it would be retroactive. His son also recommended Dr. Hodgdon at this time to secure further legal advice upon the matter.

"Thereupon, Dr. Hodgdon consulted other counsel who prepared the instrument . . . [which the plaintiffs seek to set aside.] In effect this instrument was a conveyance to Dr. Hodgdon by all the heirs of Nancy E. Colburn of their right, title and interest in her estate, upon trust to carry out the terms of the instrument which had been allowed as her will. Counsel also prepared a petition for the appointment of Dr. Hodgdon as administrator of the estate of Nancy E. Colburn. . . .

"With this instrument and petition for administration Dr. Hodgdon and his son Waldo called on Benjamin Fisher at the

latter's home in Dedham, on the evening of November 13, 1919. From there, on the same evening, they went with Benjamin Fisher, whom they asked to go with them, to the home of Mrs. Sargent and Miss Laura I. Fisher, who lived together in Westwood. . . . On the following evening Dr. Hodgdon and his son Waldo went to the house of Fred E. Colburn, and on November 17 they saw Theodore O. Colburn at Waldo C. Hodgdon's office in Boston. At these times the signatures of the respective plaintiffs were given, and upon each occasion Dr. Hodgdon said to the plaintiffs before they signed the instrument that his son was a lawyer and would answer any questions they might wish to ask.

"To all of the plaintiffs, when requesting them to sign, Dr. Hodgdon said practically the same thing, in substance, as follows: 'Many years ago Mr. Hill, one of the witnesses to Miss Colburn's will, committed an offence for which he went to prison. This fact makes a question about the legality of the will. If the will does not stand, the property will be distributed among the eight heirs. I have consulted counsel who have drawn up this paper. If this is signed by all the heirs, the effect of it will be to carry out the wishes of Miss Colburn as expressed in the will, if the will is ever declared to be invalid. If you want this to be done, and her wishes carried out, we ask you to sign. A copy of the will is annexed to the instrument. Read both and sign if you approve.'

"Dr. Hodgdon, in calling the plaintiffs' attention to the copy of the will annexed to the instrument, stated that the size of the residue of the estate was indefinite because the amount of the taxes, which would have to be deducted, had not been determined. The instrument in question, with the will annexed, was placed in the hands of each plaintiff, full and fair opportunity was given to read the same, and each apparently did so.

"After each one of the plaintiffs had signed the instrument, . . . Dr. Hodgdon presented the petition for administration . . . saying in substance as he did so that this was a petition for his appointment as administrator of the estate to be used in case the will proved to be illegal, so that the provisions of the trust instrument could be carried out. All the plaintiffs signed this petition in assent thereto, as is shown in the copy annexed.

"To none of the plaintiffs did Dr. Hodgdon make any statement which was untrue. He did not tell any of them of the letter

which he had received from Mr. Hill, . . . and so far as I can find, none of them knew the contents of that letter until after this suit was brought. No money was paid to any of the plaintiffs upon signing the instrument.

"The plaintiffs are all intelligent persons, of mature years and average education and understanding. Benjamin Fisher is the manager of a financial publishing company. Hannah Estelle Sargent and Laura I. Fisher are sisters, unmarried, and living together. A. Berkeley Colburn is retired from active business. Fred E. Colburn is a plumber, and Theodore O. Colburn is a musician. All of the above named had previously inherited property which had been administered through the Probate Court. Each of the six plaintiffs who were cousins of Nancy E. Colburn knew of their relationship to her, and that they were her next of kin and would take her property if she died intestate. None of them had accurate knowledge of the size of her estate, but each believed it was large, and had heard that she was a wealthy woman. Each of them before he signed the instrument in question knew the amount of his legacy under the will, and signed the paper in order that the wishes of Nancy E. Colburn might be carried out."

It is the duty of an executor named in a will to deliver it into the Probate Court, and he is liable to commitment to jail by the court if he neglects, without reasonable cause, to do so after being duly cited for that purpose by the court; and he is also liable to a person who is aggrieved for the damage sustained by him by reason of such neglect. R. L. c. 135, § 14. G. L. c. 191, § 13. *Sawyer* v. *Old Lowell National Bank,* 230 Mass. 342.

The only questions before this court for determination are as to the correctness of the interlocutory decree overruling the exceptions to the master's report and confirming the report, and whether there was error of law in entering a final decree dismissing the bill. The evidence before the master is not reported. 1. The first exception is to the finding of the master that "The instrument in question, with the will annexed, was placed in the hands of each plaintiff, full and fair opportunity was given to read the same, and each apparently did so." The objection that this is not a finding of fact and is argumentative cannot be sustained. Manifestly it is a finding of fact and the only rational inference to be drawn

therefrom is that each plaintiff actually read the agreement in question before signing.

The second exception, to the finding that "To none of the plaintiffs did Dr. Hodgdon make any statement which was untrue," must be overruled, as it also relates to a question of fact and is not as matter of law inconsistent with any other findings.

The third exception, to the finding that "Each of them [the plaintiffs] before he signed the instrument in question knew the amount of his legacy under the will, and signed the paper in order that the wishes of Nancy E. Colburn might be carried out," must be overruled, as the evidence is not reported. We have no means of knowing the grounds upon which this finding was made. For aught that appears to the contrary the plaintiffs may have so testified.

The fourth exception, to the finding that each of the plaintiffs before he signed the agreement knew the amount of his legacy under the will, the plaintiffs argue should be sustained on the ground that, on all the evidence, it appeared without contradiction that one of the plaintiffs did not know of the amount of his legacy until long after the agreement was signed. In the absence of a report of the evidence we cannot say that this finding was unwarranted; the exception must be overruled.

The fifth exception is to the ruling of the master excluding on cross-examination the following question propounded by the plaintiffs' counsel to Waldo Hodgdon: "Did you or your father in your presence ever communicate to the plaintiffs or any of them the fact that before the will of Nancy Colburn was admitted to probate, you or he had qualms of doubt as to the competency of the witnesses to the will or any of them?" This question manifestly was incompetent; it assumed that the witness or his father had "qualms of doubt" as to the incompetency of the witnesses or some of them; besides it does not appear what answer was expected, and if it had been in the affirmative or in the negative it would have been immaterial on any issue in the case.

The contention of the plaintiffs that the conveyance in trust is a gift cannot be sustained. In legal effect it is a contract for a valuable consideration, the consideration being the undertaking of Andrew H. Hodgdon to carry out Miss Colburn's wishes as expressed in her will.

2. The plaintiffs contend that the executor occupied a fiduciary relation to them before and at the time the agreement was entered into; that they signed it under a mistake of law and fact; that their signatures thereto were obtained by the executor by means of false and fraudulent representations made by him as to the purpose and effect of the instrument, and by fraudulent concealment from them of material facts with reference to the will and the plaintiffs' rights and interests in the property of the testatrix.

The relation between an executor on the one hand and creditors and legatees under a will is fiduciary in character and is similar to that of a trustee and *cestui que trust,* and requires the utmost good faith on his part in the performance of the duties of his office and in his dealings with the creditors and legatees. Perry on Trusts (6th ed.) §§ 206, 425, 427. Pomeroy on Equity Jur. (4th ed.) § 156. *Naylor* v. *Winch,* 1 Sim. & Stu. 555.

While transactions by a trustee in dealing with his *cestui que trust* in respect to trust property are regarded with suspicion on the ground that it gives him an undue advantage in such dealing — *Naylor* v. *Winch, supra, Barwell* v. *Barwell,* 34 Beav. 371, 1 Perry on Trusts (6th ed.) § 205 — that rule has no application to a transaction like that in the case at bar. If it appears that a person in a fiduciary position deals openly and with fairness, and with the concurrence of all persons who have any interest in the property, contracts for its purchase, the court will not set aside the transaction. *Dover* v. *Buck,* 12 L. T. R. (N. S.) 136.

The agreement, which the plaintiffs as heirs at law and next of kin of Miss Colburn entered into, was with Hodgdon individually; if the agreement had been between the plaintiffs as legatees with Hodgdon as executor of the will, undoubtedly the relation between the parties would have been one of trust. It is plain that under the agreement no fiduciary relation in a legal sense existed by reason of the circumstance that Hodgdon had been previously appointed executor of Miss Colburn's will.

The question then is whether upon the findings of the master the relations between the parties toward each other were such that it should be held as matter of law that they were fiduciary.

The judge of the Superior Court, before whom the case was heard on the master's report, made the following finding and ruling: " I find that so far as it is a matter of fact, no fiduciary or

confidential relation existed between Andrew H. Hodgdon and the other parties to the deed of trust referred to in the bill. I rule that on the facts as found, the law raises no such relation." In *American Circular Loom Co.* v. *Wilson*, 198 Mass. 182, it was said at page 200: "The right and duty of the judge to make such additional or different findings of fact, without hearing further evidence, by way of inference from the facts reported by the master, cannot be contested." *Moore* v. *Rawson*, 185 Mass. 264. *Kennedy* v. *Welch*, 196 Mass. 592. We are of opinion that the finding so made was amply warranted and that the ruling was correct.

On the facts found by the master, it is plain that no fiduciary relation existed between the parties. The burden of proof rested on the plaintiffs to prove the allegations of the bill, including the allegation that a relation of trust and confidence existed between the parties. *Woodbury* v. *Woodbury*, 141 Mass. 329. *Taylor* v. *Buttrick*, 165 Mass. 547, 549. *Ayers* v. *Farwell*, 196 Mass. 349. *Smith* v. *Smith*, 222 Mass. 102, 106. Bower on Actionable Non-Disclosure, §§ 174, 350, 351, 451, 453.

The instrument does not in any way purport to deprive the plaintiffs of the legacies given to them by the will, but on the contrary specifically recites that it is their desire that the terms of the instrument purporting to be the last will of the testatrix "be carried out." The findings of the master that to none of the plaintiffs did Hodgdon make any statement which was untrue, that in presenting the agreement to them and before it was signed he stated on each occasion that his son who was present was a lawyer and would answer any questions they might wish to ask, his statement that many years ago Mr. Hill, one of the witnesses to the will, committed an offence for which he went to prison and that that fact made a question as to the validity of the will, that if the will did not stand, the property would be distributed among the eight heirs, that they apparently read the agreement, that the plaintiffs are all intelligent persons of mature years and average education and understanding and knew that they would take the property of Miss Colburn as her next of kin if she died intestate, that they believed her estate was large, that each knew the amount of his legacy under the will and that each signed the agreement in order that the wishes of the deceased might be carried out, negative the contention that the agreement was procured by false or

fraudulent representations or by the concealment of any material fact which should have been disclosed to them. The findings make it plain that Dr. Hodgdon stated fully and in minute detail to each of them all the facts in his possession to enable them to determine whether they desired to become parties to the instrument which was presented for their signatures. Manifestly upon the findings the only reasonable inference is that the plaintiffs knew or at least had full opportunity to know all the material facts necessary to enable them to decide whether they would become parties to the agreement or not.

It is argued by the plaintiffs' counsel that, because of Dr. Hodgdon's failure to disclose certain facts, the conclusions of the master are unwarranted; and that from the other findings made by him they are inconsistent with the finding that there was no fraud or concealment. We cannot agree with this contention. We do not deem it necessary to refer to all the facts which the plaintiffs contend should have been disclosed. His failure to exhibit to them the letter received by him from Hill, his attorney, or to state its contents was not the concealment of a material fact. It would seem from this letter that the writer by citing therein St. 1918, c. 257, § 436, was of opinion that he (Hill) was a competent witness and that the will was valid, accordingly the plaintiffs were not harmed by the failure of Hodgdon to disclose to them the contents of this letter; nor were they entitled to be told by Dr. Hodgdon that Hill was incompetent as a witness, because it does not appear that he had knowledge to that effect if it was a fact. He had been advised by counsel that there was a possibility that Hill was incompetent to witness the will and so stated to the plaintiffs. The findings show that he made full disclosure to them of what he had learned in this respect and so far as appears concealed nothing material from them of which he had knowledge.

The plaintiffs also contend that Dr. Hodgdon perpetrated a fraud on the Probate Court by not disclosing to the court that Hill was an incompetent witness to the will. The master found that when the testatrix died the will was in the possession of Hill at whose office Dr. Hodgdon first saw it soon after her death; that "At that time Mr. Hill suggested that he would be glad to attend to the probate of the will, and he subsequently did so as attorney for Dr. Hodgdon. . . . Some time after this, the exact date not

appearing, but before the will was allowed, Dr. Hodgdon, in a talk with his son . . . who was a lawyer, was informed for the first time that there was a possibility that Mr. Hill was incompetent as a witness." These findings do not show that Andrew H. Hodgdon, the executor named in the will, personally had anything to do with its probate or appeared in court when it was allowed; nor does the record disclose whether the question of the competency of Hill as a witness was brought to the attention of the judge or not; therefore it cannot be found that a fraud was practised on the court, as the plaintiffs allege and contend. If we assume that the judge of probate was not informed of it by Dr. Hodgdon or his counsel and that their silence respecting Hill's possible incompetency as a witness amounted to a fraud perpetrated upon the court, still such fraud did not affect the rights of the plaintiffs as it is found that they were informed before they signed the agreement of all that Dr. Hodgdon knew, including what he had been told by counsel, and that before they signed they were told that his son, who was present, was a lawyer and would answer any questions that they might wish to ask. There is nothing to show that the executor knew that the will was invalid. The most that could be found was that he had knowledge of the possibility that Hill was incompetent to act as a subscribing witness. His failure to inform the plaintiffs that " the witness was incompetent, that the will had been allowed, that the time for appeal had passed, but that, notwithstanding this fact, the court, on presentation of these facts, might revoke its decree and disallow the will " was not the concealment of material facts. The plaintiffs knew of Hill's possible incompetency and that there was a question whether the will was valid. They also knew that the will had been allowed: it is so stated in the agreement.

For the reasons heretofore given, none of the exceptions to the master's report can be sustained; it fails to show that any fraud or false representations were made by Andrew H. Hodgdon to the plaintiffs or to any of them and there is no finding from which either can rationally be inferred; nor does it appear that he concealed from them any material facts by reason of which they were induced to sign the agreement. It follows that the final decree must be affirmed, with costs of the appeal.

*So ordered.*