LANGER, Appellant, vs. CHICAGO, MILWAUKEE, ST. PAUL & PACIFIC RAILROAD COMPANY, imp., Respondent.

*February 5—March 3, 1936.*

572

For the appellant there were briefs by *Morrison & Callahan* of Columbus, and oral argument by *Carroll B. Callahan*.

For the respondent there was a brief by *Bender, Trump & McIntyre* of Milwaukee, and *Sanborn, Blake & Aberg* of Madison, and oral argument by *Rodger M. Trump*.

WICKHEM, J.   Two questions are presented by this appeal: First, whether the road upon which plaintiff's wife and daughter were driving at the time of the accident was a public highway; and, second, assuming that it was not, whether under all the facts and circumstances defendant had a common-law duty to give timely warning as its train approached the intersection of the railroad track with this road.

On the day of the accident, which occurred April 28, 1934, at about 7:20 p. m., Grace Langer, daughter of the plaintiff, was driving her one-seated automobile in the village of Sun Prairie.   She was accompanied by her mother, Amelia Langer.   They had intended to go to the farm of one Stolen, but did not know the location of the farm.   When asking for directions, they were told that Stolen was "living across by the stockyards, across the railroad tracks."   In accordance with these directions, they took the road in question and were instantly killed at the intersection of the railroad tracks and this road when struck by defendant's westbound passenger train.

Since the first question in the case is whether this road was a public highway, and whether, therefore, defendant negligently failed to maintain any warning signs or to sound its whistle, as required by sec. 192.29 (4) and (5), Stats., it will be necessary to consider the evidence concerning this road.

The road in question was physically a continuation of South street in the village of Sun Prairie. The road starts in a southwesterly direction. At a point about one hundred seventy feet from the center of the main track, however, it curves sharply to the south and proceeds at right angles with the track of defendant company. On the east of the road, south of the curve, are the stockyards and cattle shed of the defendant railroad company. The shed is in the neighborhood of one hundred forty-eight feet long and constitutes an obstruction to the view of the track throughout its entire length. The road crosses the track and proceeds a short distance straight south to a farm. As it enters the farm, there is a gate which is ordinarily not closed. There is evidence that the road and crossing have been in existence since 1885, and it is the contention of plaintiff that since that time the road has been used continuously by the public; that one family living one hundred fifty feet south of the crossing has no other convenient access to its home; that the road was improved with gravel in 1923, and again in 1930, either by the town or village of Sun Prairie; that in 1933 or 1934, the town and village of Sun Prairie each spent $40 to gravel the road from the end of South street up to the north side of the railroad right of way; that an average of five to eight different persons used this crossing every day. From the foregoing facts it is claimed by plaintiff that the road has been used and worked as a public highway for more than ten years prior to the accident. Sec. 80.01 (2), Stats., defines a public highway:

"All roads not recorded which shall have been or shall be used and worked as public highways ten years or more shall be deemed public highways. . . ."'

From the asserted fact that the general public used this road as a highway for more than twenty years, it is claimed that independently of statute the road was a public highway.

In *Chippewa Falls v. Hopkins,* 109 Wis. 611, 85 N. W. 553, this court held that the repeal of sec. 85, ch. 19, R. S. 1858, and the enactment in 1878 of what is now sec. 80.01 (2), Stats., did not alter or suspend the common law that a highway may be created by user alone for twenty years, but simply added the requirement of working to make complete the operation of the ten-year statutory user. See also, to the same effect, *Nuthals v. Green Bay,* 162 Wis. 434, 156 N. W. 472.

The defendant relies upon the fact that from South street to the south boundary of defendant's right of way, the road is entirely within defendant's right-of-way lines; that the railroad company, as a public service corporation, maintains depot facilities and grounds and necessarily requires some means of ingress and egress in order that the public may reach these grounds; that in so far as this portion of the road is concerned, it is a mere convenience to farmers who bring their stock to Sun Prairie for shipment. From this it is contended that the sole public use of the highway was a use associated or connected with the railroad; that this was permissive and not adverse in character; that such a user could not ripen into a public easement, nor could the road become a public highway under those circumstances; that the road is simply a part of the depot grounds.

It is our conclusion that this contention is sound, and that, consequently, the railroad track at the point of the accident cannot be held to cross a public highway. While a few persons may have used this portion of the road to get to places south of the track, this fact cannot be regarded as sufficient evidence of adverse user in the face of a general permission by the railroad to members of the public to use the portion of the road north of the track. The two or three sporadic instances of contributions to the improvement of this road by the town or village under special arrangements with the railroad company fall short of sufficient evidence to

bring the case within sec. 80.01 (2), Stats. It cannot be said that this road was worked as a public highway for ten years or more. The evidence merely shows occasional and isolated instances of improvements during that period, and these under special circumstances that render them of no significance. It follows that to the extent that plaintiff's case depends upon the establishment of this road as a public highway, it must fail.

The other contention is that even if this is a private road, the railroad company had a common-law duty to give warning of the approaching train in view of the obstructions, both to the view of the engineer and to that of drivers on this road. The principal reliance is upon the case of *Michaels v. Chicago, B. & Q. R. Co.* 146 Wis. 466, 131 N. W. 892. In that case this court said:

"The private crossing was constructed at the time the railroad was built some twenty years before the injury, and afterwards maintained by defendant. It had been used by the occupiers of the Seater farm and some others. The evidence shows that this private crossing was dangerous because of an overhanging hill, the curve, the difficulty in hearing an approaching train, as well as the physical condition of the crossing. . . . The unwritten law, therefore, in the absence of statute, made it the duty of defendant to signal the approach of the train, if in the exercise of its duty ordinary care required it to do so. *Duffy v. Chicago & N. W. R. Co.* 32 Wis. 269; . . . *Winstanley v. Chicago, M. & St. P. R. Co.* 72 Wis. 375, 39 N. W. 856. . . .

"In the instant case the court is of the opinion that whether the defendant was guilty of negligence in failing to signal the approach of the train before reaching the private crossing was a question for the jury."

Reliance is also had upon *Kujawa v. Chicago, M. & St. P. R. Co.* 135 Wis. 562, 116 N. W. 249, where it was held that even in the absence of express statutory requirement, it was the duty of the railroad employees to approach the highway crossing with due care, having regard to the physical

surroundings and obstructions of the view, and that if the circumstances called for the giving of signals for the safety of travelers approaching the crossing using due care, the omission to give such a warning constituted negligence.

The rule of law announced in these cases is well established and sound. The difficulty arises when application of the rule is sought to be made to the facts of a particular case. It must be apparent that there is a marked distinction between the *quantum* of care exacted of railroads with respect to public grade crossings and that exacted with reference to private crossings. With reference to the former, definite statutory standards are set because of the fact that public crossings are, or are likely to be, more frequently used. In the case of private crossings, the *quantum* of care to be exercised must necessarily vary with the circumstances. The amount of use which the crossing has, and the physical facts bearing upon the hazardous character of the crossing, must all be taken into account. The rule is merely that there shall be adequate warning of the approach of a train. If there is, it is not important what form the warning takes, since there is no statutory specification to be followed. If the headlight of the train or the noise of its approach gives adequate notice to those using the private crossing, or if the open and unobstructed character of the crossing is such as to give adequate opportunity to see and hear the train, negligence on the part of the railroad cannot be predicated on failure to give a particular kind of warning. In the *Michaels Case,* the private crossing there involved was in close proximity to an overhanging bluff, and the presence of this bluff, together with a curve in the vicinity of the crossing, made it impossible for one using the crossing either to see or to hear the train in time to avoid an accident. Under such circumstances it was held that a jury might conclude that some special warning should have been given by the operators of the train.

The facts of this case are materially different. Here the road was perfectly straight for miles. True, a view of the track to the east was obstructed up to about twenty-five feet from the rail by a low cattle shed, but there is no evidence that the noise of the train's approach was in any manner obstructed or deadened by this shed. The bell of the train was ringing; the headlight of the train was in operation and gave adequate warning of its approach. Under these circumstances, we think that a jury could not be permitted to say that one approaching this track would not have an adequate notice of the oncoming train. See *Henderson v. O'Leary*, 177 Wis. 130, 187 N. W. 994. Certainly there could be no question about this had the train been coming from the west. It is only the presence of the cattle shed that injects any doubt into the situation. We consider, however, that since the headlight would be visible for some time before the train itself was visible, and the noise of the train would plainly be heard before it could be seen, and since there was a view to the east of three hundred seventy-five feet from a vehicle located twenty-five feet from the track, the trial court properly directed a verdict upon the ground that no negligence on the part of the defendant railroad company had been shown.

Error is also assigned because the court excluded evidence offered for the plaintiff. The evidence excluded upon the objection of the defendant had to do with statements made by the engineer of the train immediately after the accident. One Erna Thompson testified: "I had conversation with the conductor and engineer of the train that night immediately after the accident." The question was then asked: "With whom did you talk, do you know?" Answer: "The conductor and the engineer." The next question was: "What conversation did you have that evening?" That was objected to as immaterial and hearsay, and objection was sus-

tained upon the ground that while the witness testified that the conversation took place "about a minute or two minutes" after the accident, "It must have been more than a minute" because the witness had to come from her home to the scene of the accident before talking to plaintiff's employees. Plaintiff claims that the remarks of the court fairly imply that if the statements were made more than a minute after the accident, they could not be part of the *res gestæ*. This is contended to be error under the doctrine of *Hermes v. Chicago & N. W. R. Co.* 80 Wis. 590, 50 N. W. 584; *Christianson v. Pioneer Furniture Co.* 92 Wis. 649, 66 N. W. 699; *Hupfer v. National Distilling Co.* 119 Wis. 417, 96 N. W. 809. In the *Hermes Case,* the court not only held it error to exclude evidence that was properly a part of the *res gestæ,* but held it prejudicial error, stating,

". . . Of course we do not know how material or important the declarations of the engineer might have been, whether he admitted he should have seen the child in time to stop the train, and was careless in not doing so, or what in fact he said to the witness about how he came to run over the child. . . ."

Since the three decisions relied on by the plaintiff, sec. 274.37, Stats., has been enacted. This section reads as follows:

"No judgment shall be reversed or set aside or new trial granted in any action or proceeding, civil or criminal, on the ground of misdirection of the jury, or the improper admission of evidence, or for error as to any matter of pleading or procedure, unless in the opinion of the court to which the application is made, after an examination of the entire action or proceeding, it shall appear that the error complained of has affected the substantial rights of the party seeking to reverse or set aside the judgment, or to secure the new trial."

Since the enactment of this section it has been held that there can be no reversal for the exclusion of evidence, the

purpose and effect of which were not disclosed to the court. *Zwietusch v. Luehring,* 156 Wis. 96, 144 N. W. 257. In the absence of such a disclosure in the form of an offer of proof, the mere exclusion under such circumstances as are here shown cannot be held to have prejudicially affected plaintiff's rights. This court has no knowledge as to the content of the testimony excluded or its materiality to plaintiff's cause. Under these circumstances, assuming but not deciding that the court's ruling is erroneous, we cannot say from an examination of the record that the error complained of has affected the substantial rights of the plaintiff.

Plaintiff's final assignment of error is that the court improperly denied plaintiff the right to examine defendant's engineer adversely. Plaintiff called defendant's engineer adversely under sec. 325.14 (1), Stats. 1933, which provides in part as follows:

"(1) Any party or any person for whose immediate benefit any civil action or proceeding is prosecuted or defended, or his or its assignor, officer, agent or employee, or the person who was such officer, agent or employee at the time of the occurrence of the facts made the subject of the examination, may be examined upon the trial as if under cross-examination, at the instance of any adverse party. . . ."

The court said: "Why, that is always the wrong way round. He will have to go on the stand later. Put him on later. Get your own story in first." This is assigned as error. It is not at all clear from the statement of the court that it meant to or did deny to plaintiff the right to call the engineer adversely, or that it did anything further than require that he be called at the end of plaintiff's case rather than at the beginning. However that may be, we fail to discover any respect in which the substantial rights of the plaintiff were impaired by the ruling.

*By the Court.*—Judgment affirmed.