FINDORFF (Mrs. John H.), Appellant, vs. FINDORFF (Milton B.) and others, Respondents.

*February 3—February 28, 1958.*

For the appellant there was a brief by *Rieser, Mathys, McNamara & Stafford,* and oral argument by *Willard Stafford* and by *Robert W. Smith,* all of Madison.

For the respondents there was a brief by *Stroud, Stebbins & Stroud* and *W. Wade Boardman,* guardian *ad litem* for minors, all of Madison, and oral argument by *Mr. Donald R. Stroud, Mr. Ray M. Stroud,* and *Mr. Boardman.*

CURRIE, J.   The three principal issues presented on this appeal are:

(1) Was the trust agreement of September 26, 1949, effective to create a presently operative trust, or was it only executory in nature?

(2) Did the trial court commit error in not reforming such trust agreement so as to include a power of revocation in favor of the settlor?

(3) Was it prejudicial error for the court to deny admission in evidence of the adverse examination before trial of Mrs. Findorff who was physically unable to appear and testify at the trial?

The first-listed issue is the crucial one on this appeal. This is because counsel for Mrs. Findorff maintain that the trust was wholly executory in nature, and that the subsequent

course of conduct by the settlor and the two trustees conclusively established that the trust was never put into operation. It is further contended that Mrs. Findorff could revoke the trust agreement so long as it continued in its executory character.

The language of the trust instrument completely refutes such contention that the trust was executory in nature. We quote the following paragraph of the agreement, which bore the heading "Transfer of Property in Trust:"

"Mrs. Findorff hereby transfers, conveys, and assigns in trust to said trustees all of her right, title, and interest in the one-third net personal estate and the undivided one-third interest in the real estate of the estate of John H. Findorff, deceased, hereinafter described, except her interest in the lease dated July 1, 1946, wherein J. H. Findorff & Son, Inc., is lessee and John H. Findorff and Anna C. Findorff are lessors, all subject to the provisions and terms hereinafter set forth."

However, it is the position of counsel for Mrs. Findorff that there was no res in existence at the time the agreement was executed which could provide the subject matter for a valid trust; and, therefore, the trust was by necessity of an executory character. This argument is grounded upon the fact that an election by a widow to take under the law, and not under the will of her husband, is not effective until filed in the county court. Sec. 233.14, Stats., and *Church v. McLaren* (1893), 85 Wis. 122, 55 N. W. 152. Mrs. Findorff's election so to take was not filed with the county court, in which her husband's estate was being probated, until five days after the execution of the trust instrument. Nevertheless, Mrs. Findorff at the time of execution of the trust possessed the alternative rights of either taking under the will or under the intestacy statutes. Under either right she had an assignable interest in the property comprising her husband's estate.

She possessed such right to take under the law independently of filing her election so to take, because such filing did not create the right. This is made clear in *Ludington v. Patton* (1901), 111 Wis. 208, 231, 86 N. W. 571, wherein the court stated that the widow's election statute (now sec. 233.14) "was intended to operate as a statute of limitation, fixing with certainty a time, deemed by legislative wisdom to be reasonable, within which a widow must assert, by an affirmative act as indicated, her intention to take the rights secured to her by law in her husband's estate, or suffer the penalty of their irretrievable loss. Further, it must be admitted that such statute should be given the same force and effect as any other statute of limitations."

The fact, that the exact nature of Mrs. Findorff's interest in the property which comprised her husband's estate, on September 26, 1949, was contingent upon whether she filed the election to take under the law within one year after the date of filing of the petition for probate, is immaterial. Even a contingent interest of this nature may constitute a valid res of a trust. Restatement, 1 Trusts, p. 243, sec. 85. The governing principle of law with respect to this issue is stated in 1 Perry, Trusts and Trustees (7th ed.), p. 52, sec. 68, as follows:

"At common law no possibility, right, title, nor *chose in action* could be granted or assigned to strangers. But in equity the rule is different, and *choses in action,* expectancies, contingent interests, and even possibilities may be assigned, and a valid trust created in them. Equitable reversionary interests stand upon the same ground. Property not owned by the assignor at the time, and not even *in esse,* may be assigned in equity, and a valid trust may be created in a naked power or authority."

Inasmuch as at the time of the execution of the trust instrument a present assignable interest existed which was placed in trust, it is also immaterial that further acts upon the part

of the settlor might be required in order to vest legal title in the trustees to the assets to be thereafter assigned to her by the final decree to be entered in her husband's estate. The trust instrument contained this further provision:

"At the request of the trustees, Mrs. Findorff agrees to sign and deliver any assignment, bill of sale, lease, mortgage, deed, or any other document as to the one-third net personal estate and the one-third interest in the real estate of John H. Findorff, deceased, which properties are to become the corpus of this trust, wherever the execution of any such instrument is necessary to do so."

The trust instrument imposed certain positive duties upon the trustees which they undertook to perform. The covenant upon the part of the trustees to so perform these duties provided a sufficient legal consideration for the above-quoted promise of the settlor to execute further needed documents of transfer and conveyance. *Colburn v. Hodgdon* (1922), 241 Mass. 183, 135 N. E. 107.

Much evidence was introduced at the trial in behalf of Mrs. Findorff to show that she and the trustees dealt with trust assets, as if the trust had never become operative and that such assets were her individual property. For example, her interest in the real estate was assigned to her individually by the final decree, and she conveyed away the same by deeds executed by her and not the trustees. Likewise, securities received by her from the estate were permitted to be registered in her name although the trustees had possession thereof. We deem all of this evidence to be wholly immaterial. While the practical construction placed upon an ambiguous provision of a contract or trust by the parties thereto through their acts is entitled to great weight, the parties by their acts cannot abrogate or nullify a validly existing trust contrary to its express terms.

It is, therefore, the determination of this court that a valid existing trust came into operation on September 26, 1949.

Unless the trust instrument be reformed to reserve a power of revocation, such trust is irrevocable because no right to revoke was expressly reserved. Restatement, 2 Trusts, p. 984, sec. 330.

We turn now to the issue of whether it was error for the trial court to refuse to reform the trust instrument so as to reserve a power of revocation in the settlor. The trial court, in its findings of fact, expressly found that the trust agreement "embodies the intention and agreement of the parties to the instrument when they signed the same and it was their intention that it be effective to create the trust defined by the agreement."

Counsel for Mrs. Findorff contend that the trust agreement should be reformed to permit revocation by her, because her confidential advisers failed to inform her prior to the execution of the trust agreement that she could set up a revocable trust as well as an irrevocable one. Such advisers were Attorney Toebaas, the son, and daughter. It is true that Mr. Toebaas was acting in the capacity of attorney for Mrs. Findorff as well as for the executors of the estate. However, Mrs. Findorff expressed reluctance to upset her husband's will by electing to take under the law, and told Mr. Toebaas, "Well, this is Daddy's will." Under her husband's will she had no power to change the terms of the testamentary trust set up for her benefit. Therefore, the creation of an irrevocable *inter vivos* trust was more in keeping with the terms of the will than would have been a revocable one. All of the terms of the trust agreement were thoroughly explained by Mr. Toebaas to Mrs. Findorff before it was executed. Furthermore, he had previously told her that she had the right to make an election to take under the law without entering into a trust agreement.

The grounds for reforming a contract are mutual mistake, or a mistake on one side and fraud on the other. *Langer v. Stegerwald Lumber Co.* (1952), 262 Wis. 383, 391a, 55

N. W. (2d) 389, 56 N. W. (2d) 512. However, in a case for reformation of a trust agreement because of mistake on the part of the settlor in failing to include a power of revocation, such unilateral mistake may be sufficient to entitle the settlor to reformation. Restatement, 2 Trusts, p. 1003, sec. 332. To prevail on the ground of mistake it is not enough to show that the settlor did not consider the question of a power of revocation. Ibid., p. 1004, comment 1 *b*. No misrepresentations are claimed to have been made to Mrs. Findorff. Therefore, in order for her to be entitled to the reformation prayed for, it would be incumbent upon her to establish fraudulent concealment on the part of her attorney, son, and daughter. The evidence will not support such a finding.

Mrs. Findorff's advanced age and physical condition were such that her physician advised her not to attend the trial after the first morning thereof, which advice she followed. She was, therefore, unavailable to testify in her own behalf. However, there was no showing that Mrs. Findorff was so ill that her deposition could not be taken, or that it was not feasible to hold an adjourned session of court at her bedside. During the course of the trial her counsel offered in evidence the deposition of her adverse examination taken before trial. The trial court sustained an objection to the admissibility thereof. Such ruling was based upon the ground that sub. (5) of sec. 326.12, Stats.,[1] only purports to authorize the admission of a deposition of an adverse examination by the party who took the examination, and because sec. 325.31 [2] did not apply to the situation.

---

[1] Sub. (5) of sec. 326.12 reads: "Such portions of any such deposition as are relevant to the issues may be offered by the party taking the same, and shall be received when so offered upon the trial of action or proceeding in which it is taken, notwithstanding the deponent may be present."

[2] Sec. 325.31 provides: "The testimony of a deceased witness, or a witness absent from the state, taken in any action or proceeding

Counsel for Mrs. Findorff do not question the inadmissibility of the offered deposition under sub. (5) of sec. 326.12 and sec. 325.31, Stats. However, they urge that the trial court had inherent power to admit the same, and cite the authorities listed at pages 316, 317 of *Markowitz v. Milwaukee E. R. & L. Co.* (1939), 230 Wis. 312, 284 N. W. 31. Even if the court possessed the inherent power to admit prior testimony of a physically incapacitated person given in the same lawsuit, we doubt if it ever would be proper to offer an entire adverse examination of such party, because parts might be incompetent or irrelevant. Furthermore, it was incumbent upon counsel to make an offer of proof as to the rejected testimony as a condition precedent to this court passing on this alleged erroneous ruling on evidence. *Plainse v. Engle* (1952), 262 Wis. 506, 56 N. W. (2d) 89, 57 N. W. (2d) 586; and *Langer v. Chicago, M., St. P. & P. R. Co.* (1936), 220 Wis. 571, 580, 265 N. W. 851. This is because without such offer of proof this court cannot determine whether the exclusion of the offered evidence was prejudicial, even though such ruling may have been erroneous.

Because no proper offer of proof was made we do not deem it advisable to pass upon the issue of the inherent power of the court to have admitted part or all of the offered adverse examination.

*By the Court.*—Judgment affirmed.

WINGERT, J., took no part.

---

(except in a default action or proceeding where service of process was obtained by publication), shall be admissible in evidence in any retrial, or in any other action or proceeding where the party against whom it is offered shall have had an opportunity to cross-examine said witness, and where the issue upon which it is offered is substantially the same as the one upon which it was taken."