RAUSCH, Plaintiff and Appellant, v. BUISSE, Defendant and Respondent: WISCONSIN NATURAL GAS COMPANY, Defendant.

*October 3—December 16, 1966.*

156

158

For the appellant there was a brief by *Lucien J. Piery* of Kenosha, and *Heft, Coates, Boggs & Heft* of Racine, and oral argument by *Carroll R. Heft* and *Robert H. Bichler* of Racine.

For the respondent there was a brief by *Kivett & Kasdorf*, attorneys, and *Alan M. Clack* and *Richard Schulz* of counsel, all of Milwaukee, and oral argument by *Mr. Clack*.

WILKIE, J. The issues presented by this appeal fall into two categories:

*First,* what duty was owed by the sewer contractor to the plaintiff?

*Second,* were the trial judge's rulings concerning the admission or exclusion of evidence erroneous so that the appellant is entitled to a new trial?

In the trial court's view the duty placed upon the defendant was restricted to requiring the contractor to warn as regards the protruding manhole. When the jury found that the plaintiff did not strike the manhole that disposed of the case. The learned trial court, we conclude, correctly rejected any further theory of imposing a duty on the defendant that could give rise to negligence.

What other duty was imposed on the contractor? Appellant contends an additional duty was imposed by contract. He attempts to establish a duty on the part of the defendant to warn against all obstructions on Forty-fifth street in the area of the accident. Plaintiff's first theory for establishing this duty on defendant is based upon the contract between defendant and the city. This contract requires defendant to "put up and maintain, at his own cost, such barriers as will protect the public from all danger in any manner connected herewith, and that during the nighttime he will put up and maintain a sufficient number of red lights to give warning of danger." A duty may be imposed on a person by a contract and nonperformance of this duty created by the contract may constitute actionable negligence.[1] The issue thus becomes whether the contract required the defendant to maintain barricades and warning lights on Forty-fifth street on the date of the accident.

The contract imposes the above duty "during the construction of said sewers and until the completion of each and every one of said sewers." The contract involved the construction of several sewers and manholes throughout the city of Kenosha. The plaintiff argues that the defendant had a duty to put up barricades and lights during the nighttime and had a duty to continue doing so until the contractual work was accepted as a whole.

[1] *Colton v. Foulkes* (1951), 259 Wis. 142, 47 N. W. (2d) 901; *Presser v. Siesel Construction Co.* (1963), 19 Wis. (2d) 54, 119 N. W. (2d) 405; *Alsteen v. Gehl* (1963), 21 Wis. (2d) 349, 124 N. W. (2d) 312.

The trial court refused to accept this construction of the contract, ruling that the duty was imposed during the progress of the work at each particular site, and terminated at that site upon completion of the sewer and manhole there.

Sec. 27.8 of the specifications supports the trial court's ruling. This section says:

"It shall be the duty of the Contractor to erect, and keep erected, a fence or proper barrier along the line of the work or trenches and across the ends of same in order effectually to guard the public from liability of falling into the trenches, or from upsetting vehicles by the earth thrown from the trenches, *during the progress of the work*, both by day and by night. A red light must also be maintained at each end of the barriers from twilight in the evening until sunrise, and also at all street intersections *where trenches are open*." (Emphasis added.)

Once a job is completed at a particular site, a contractor generally removes equipment when he moves on to construction at another site. Otherwise a great number of warning devices would be needed in order to place a warning device at each jobsite (whether completed or not) under a contract. Imposing a continuing obligation on the contractor for accidents at a jobsite where work has been completed until completion of all jobs under the entire contract is too burdensome, and unless the wording is much more explicit than here, would not be part of the intention of the parties to the contract.

Plaintiff's second theory for imposing a contractual duty on the contractor to provide barricades and warning devices on Forty-fifth street, is that the work had not been completed at the jobsite so that the contractual duty on Forty-fifth street remains upon defendant. The trial court rejected this contention. All testimony indicated that the work had been completed several days prior to the accident. Defendant's foreman testified that the work was completed and the grade was reestablished

level with the manhole by backfilling ten to twelve days before the accident. Plaintiff argues that the duty to grade imposed by the contract refers to grading the whole street, thereby making defendant responsible for the condition of the whole street. The trial court correctly confined the duty to grade to the trenches and to the area around the manhole. The contract and specifications regarding the fill and grading of the trenches support this interpretation. Thus the work at this jobsite was completed and no further duty upon the defendant remained, except in regard to the improper protrusion of the manhole.

Plaintiff also asserts that a duty is imposed upon the defendant under the safe-place statute (sec. 101.06, Stats.). This statute requires that certain precautions must be taken by an employer at a place of employment. Defendant, however, had completed his work on Forty-fifth street. Once work on a street project has terminated it is no longer a place of employment.[2] Thus a duty cannot be imposed upon defendant via the safe-place statute because of the absence of a place of employment.

Thus, the trial court was correct in limiting defendant's duty to this appellant to the protruded manhole.

At the trial the jury was asked:

"Did the plaintiff, Roy Frank Rausch, Jr., strike the manhole installed by the defendant, Charles Buisse?"

With two dissents it answered "No" thus, in the opinion of the trial court, deciding the case.

This question was evidentiary in form like the one approved in the case of *Fehrman v. Smirl*.[3] *Fehrman* was a medical malpractice case, and during the trial the evidence only concerned injury to the external sphincter. The plaintiff was attempting to use this evidence to show the negligence of Dr. Smirl and our court stated it would

---

[2] *Padley v. Lodi* (1940), 233 Wis. 661, 290 N. W. 136.

[3] (1963), 20 Wis. (2d) 1, 28, 121 N. W. (2d) 255, 122 N. W. (2d) 439.

recommend (at a new trial) submitting the question whether Fehrman's external sphincter was injured in the course of the first or second operation, or the post-operative care. A "No" answer by the jury to this question would be determinative of the case.[4]

Similarly, in the case at bar the trial court believed that the plaintiff's recovery of damages hinged upon a finding that plaintiff actually struck the manhole constructed by the defendant. The trial court's basis is that the defendant's duty toward the plaintiff was restricted to warning of the protruding manhole. The trial court explicitly rejected plaintiff's attempts to broaden the duty of the defendant. The existence of a duty between two parties and the scope of such duty are pure questions of law to be decided by the judge.[5]

Appellant argues that questions of negligence and causation were not determined by the special verdict formulated by the trial court. Once the judge determines that no duty exists, no finding is necessary on the other elements of a case in tort.[6]

---

[4] The case of *Sharp v. Milwaukee & Suburban Transport Corp.* (1963), 18 Wis. (2d) 467, 481, 118 N. W. (2d) 905, also sanctions this technique.

[5] Prosser, Law of Torts (3d ed.), p. 207, sec. 36; 38 Am. Jur., Negligence, p. 1051, sec. 346; Campbell, Wisconsin Law Governing Automobile Accidents, 1962 Wisconsin Law Review, 240, 247–251.

[6] *Morril v. Morril* (1928), 104 N. J. Law 557, 560, 142 Atl. 337. "Hence, it becomes imperative before legal liability for conceded damages can be imposed upon a defendant, for the court in the first instance to inquire and determine the character of duty which the law under the facts imposed upon the defendant as the basis of liability; for manifestly it cannot be conceded that the jury from their inner consciousness may evolve in every variety of tort feasance a legal duty as the standard of liability. *The rule of legal duty or the standard of human conduct under any given circumstances must be declared by the court as a preliminary to the submission of the case to the jury, and if upon the conceded facts no rule of legal duty can be said to have been transgressed, legal liability cannot be said to supervene so as to warrant the submission of the case to the jury.*" (Emphasis added.)

Assuming the limited duty imposed on defendant, appellant contends that there was error on trial that warrants a new trial.

Appellant asserts that the trial judge erroneously excluded some of his questions. The following are examples taken from the questioning:

"*Q.* State whether or not you noticed any manholes in the street near the house?
"*Mr. Clack:* I object as leading, your honor.
"*Court:* Objection sustained.
"*Q.* What, if anything, did you see in the street near the white house you have described? *A.* Like I say, that road looked like a grader went through there and there was a manhole sticking up.
"*. . .*
"*Q.* State whether or not you noticed any barricades in the area of the manhole?
"*Mr. Clack:* I object as leading, your honor.
"*Court:* Objection sustained.
"*Q.* What, if anything, did you see around the manhole? *A.* There were no barricades whatever.
"*. . .*
"*Q.* And what, if anything, did you notice in reference to barricades at the intersection of 26th Avenue and 45th?
"*Mr. Clack:* I object as being leading and suggestive, your honor.
"*Court:* Objection sustained.
"*Q.* What, if anything, did you notice at the intersection of 26th Avenue and 45th Street? *A.* I didn't see no barricades."

Regardless of the rulings on these questions others immediately were asked that brought out the desired answers. If there was any abuse of discretion,[7] which we doubt, there was no prejudice.[8]

---

[7] A question may suggest a subject but not an answer. *Born v. Rosenow* (1893), 84 Wis. 620, 54 N. W. 1089.

[8] *Millay v. Milwaukee Automobile Mut. Ins. Co.* (1963), 19 Wis. (2d) 330, 337, 120 N. W. (2d) 103. See also sec. 274.37, Stats.; 1945 Wisconsin Law Review, 229; *Holtz v. Fogarty* (1955), 270 Wis. 647, 650, 72 N. W. (2d) 411.

Plaintiff also claims error in rejecting the testimony of two witnesses who observed a single tire track made by a two-wheeled vehicle on Forty-fifth street. The time of the observation was 10 o'clock Sunday morning. The trial court rejected this evidence because of the six-hour time difference, because the motorcycle was removed and there was no tie-up of the tire track to the motorcycle, and because several policemen investigating the accident were unable to find any tire tracks.

Rejection of evidence because of remoteness rests in the trial court's discretion. Remoteness in point of time does not necessarily render evidence irrelevant but it may do so where the lapsed time is so great as to negative all rational or logical connection between the fact sought to be proved and the remote evidence offered in proof thereof.[9] Thus, the six-hour time lapse between the accident and the witnesses' observation supports the trial court's ruling. The fact that more competent evidence not so remote as to time or place was offered also supports the trial court's decision.[10] Moreover,

"The general rule is that testimony as to tire marks on the highway is admissible in civil actions for injury or damage, where a sufficient foundation therefor is laid by the showing, for example, that the condition of the road was the same as it was at the time of the accident, and had not been changed by the weather or traffic, and there is sufficient identification that the marks were made by the automobile involved in the accident."[11]

Plaintiff claims error was made in excluding testimony as to the specifications. This testimony was offered in rebuttal to a defendant's witness who testified that defendant completed the work ten days before the accident happened. The specifications contradicted this testimony.

[9] *Shapiro v. Klinker* (1950), 257 Wis. 622, 44 N. W. (2d) 622.
[10] *Ward v. Thompson* (1911), 146 Wis. 376, 131 N. W. 1006.
[11] Anno. 23 A. L. R. (2d) 112, 116. See also *Atkinson v. Huber* (1955), 268 Wis. 615, 68 N. W. (2d) 447; *Zinda v. Pavloski* (1966), 29 Wis. (2d) 640, 139 N. W. (2d) 563.

An objection was made and sustained that this was improper rebuttal and beyond the scope of defendant's proof.

The general rule is that the plaintiff, in his rebuttal, may only meet the new facts put in by the defendant in his case in reply.[12] This rule is not inflexible and the court may in its discretion allow or refuse to receive such evidence. An exception is generally made when the evidence is necessary to achieve justice.[13] The evidence offered by the plaintiff in this case is not so crucial that the trial court abused its discretion in refusing to admit it.

Even if the trial court abused its discretion by excluding the rebuttal evidence, plaintiff may not rely on this ground because he failed to make an offer of proof. An offer of proof is necessary to preserve an evidentiary error for appeal.[14] Where an improper offer of proof was made as to rejected testimony, the supreme court on appeal will not pass on the alleged error in the rejection of such testimony.[15]

Plaintiff also claims error by the trial court in permitting the defendant's attorney to inquire into the nature of a crime committed by the plaintiff on cross-examination. The defendant's attorney asked the plaintiff whether plaintiff had ever been convicted of a crime. When plaintiff answered negatively, the defendant's attorney then asked whether plaintiff had ever been convicted of contributing to the delinquency of a minor, and the plaintiff answered "Yes." Plaintiff's attorney objected to this question on the ground that the crime

[12] 6 Wigmore, Evidence (3d ed.), p. 510, sec. 1873.

[13] *McGowan v. Chicago & N. W. R. Co.* (1895), 91 Wis. 147, 64 N. W. 891.

[14] *Langer v. Chicago, M., St. P. & P. R. Co.* (1936), 220 Wis. 571, 265 N. W. 851; *Trzebietowski v. Jereski* (1914), 159 Wis. 190, 149 N. W. 743.

[15] *Findorff v. Findorff* (1958), 3 Wis. (2d) 215, 88 N. W. (2d) 327.

committed by the plaintiff did not relate to honesty and veracity and served only to inject irrational prejudice into the case.

The law on this point is clear. Sec. 325.19, Stats. 1963, provides that:

"A person who has been convicted of a criminal offense is, notwithstanding, a competent witness, but the conviction may be proved to affect his credibility, either by the record or by his own cross-examination, upon which he must answer any question relevant to that inquiry, and the party cross-examining him is not concluded by his answer."

This statute permits the use of a criminal conviction for impeachment but prohibits inquiring into the nature of the crime. However, since the party cross-examining is not concluded by the witness' answer, counsel may go into the nature of the crime where the witness denies being convicted of such. *State v. Adams* announced the rule (which still remains intact) as follows:

"If the statute must be construed so as to require the defendant to answer as to the nature of the offense with which he had been charged such authority extends only when the evidence of a previous conviction has been brought out upon the cross-examination of the defendant or by the record." [16]

Plaintiff argues the rule concerning the use of criminal convictions for impeachment purposes should be changed because often such convictions have little bearing on the truthfulness or veracity of the witness. The Model Code of Evidence and the Uniform Rules of Evidence support this approach. However, the Wisconsin rule is set forth by a legislative enactment. Plaintiff's argument for a change should be submitted as a proposed rule change by this court or addressed to the legislature.

[16] (1950), 257 Wis. 433, 436, 43 N. W. (2d) 446.

The last error claimed by the plaintiff is the trial court's ruling permitting a hypothetical question by defense counsel to an expert witness. In this hypothetical question defendant's counsel stated various physical facts about the accident in question and asked for an opinion as to whether the plaintiff could possibly have struck the manhole. The plaintiff's counsel objected on the ground that facts were left out of the hypothetical question which were essential to an opinion on this matter. The trial judge overruled the objection and permitted the question.

An expert opinion can be received on an ultimate question as long as such opinion is in hypothetical form.[17] The general rule is that a party must include all facts necessary to be considered in arriving at a correct answer.[18]

*Kreyer* has interpreted this rule to mean that only those facts are necessary that are needed to provide a correct answer on the theory advocated by the questioner's side of the case.[19] In other words, a party has a right to an opinion of an expert witness on the facts which that party claims to be the facts of the case. This rule is subject to the limitation that questions which unfairly select part of the established facts or which omit material parts should be rejected. However, the normal rule is that any disadvantage to the defendant by the hypothetical question should be remedied on cross-examination.[20]

In the case at bar, plaintiff's counsel was clearly given an opportunity to submit facts which he felt were neces-

[17] *Maitland v. Gilbert Paper Co.* (1897), 97 Wis. 476, 72 N. W. 1124.

[18] *Estate of Scherrer* (1943), 242 Wis. 211, 7 N. W. (2d) 848; *Hoffman v. Regling* (1935), 217 Wis. 66, 258 N. W. 347.

[19] *Kreyer v. Farmers' Co-operative Lumber Co.* (1962), 18 Wis. (2d) 67, 77, 78, 117 N. W. (2d) 646; *Simpson v. State* (1966), 32 Wis. (2d) 195, 207, 145 N. W. (2d) 206.

[20] 2 Jones, Evidence (5th ed.), p. 785, sec. 416.

sary to a proper opinion but was unable to do so. He was also given an opportunity to expose the weakness of the opinion through cross-examination. No prejudice to the plaintiff resulted from the court's ruling permitting this hypothetical question.

An exhaustive review of the entire record convinces us that justice has not miscarried and there is no reason why we should direct a new trial in the interests of justice under sec. 251.09, Stats.

*By the Court.*—Judgment affirmed.