STATE EX REL. FINNEGAN, Attorney General, and others, Respondents, vs. LINCOLN DAIRY COMPANY, Appellant.

*January 9—March 17, 1936.*

2

For the appellant there were briefs by *Charles C. Hiken,*
*Max H. Karl,* and *Hersh & Morse,* all of Milwaukee, and
oral argument by *Mr. Herbert Morse, Mr. Karl,* and *Mr.*
*Emil Hersh.*

For the respondents there were briefs by the *Attorney*
*General, R. M. Orchard,* assistant attorney general, *Fred M.*
*Wylie,* special counsel, and *William A. Zabel,* district attor-

ney of Milwaukee county, and oral argument by *Mr. Wylie, Mr. Orchard,* and *Mr. George H. Gabel* of Milwaukee.

The following opinion was filed February 4, 1936:

ROSENBERRY, C. J. By statutory definition "commission" means the department of agriculture and markets, and the term will be so used in this opinion. Sec. 99.165 (2) (b). The legislature conferred certain powers upon the commission by sec. 99.165 (3). That section, so far as material here, is as follows:

"99.165 (3) (a) The commission shall have jurisdiction upon its own initiative, or upon complaint in writing, to inquire into any matter relating to the supply, distribution or sale of milk or cream in cities, villages and towns to which this section is applicable.

"(b) If in any such inquiry the commission shall find that a public emergency exists, whereby the milk supply in any such cities, villages and towns is likely to be interrupted or impaired in quality to an extent affecting the public health or convenience, or whereby the distribution, sale or disposal is subject to discriminatory, unfair or unreasonable methods of competition, resulting in unjust or unreasonable prices to the producer or jeopardizing payment for his product, or the distribution, sale or disposal is subject to practices which will eliminate or tend to eliminate competition therein, then the commission may, after notice and hearing, as provided in section 99.24, make general or special orders, prohibiting unlawful practices, and, for temporary emergency purposes:

"1. Prescribing the terms and conditions upon which milk or cream may be purchased, received or handled.

"2. Prescribing or establishing, from time to time, and when necessary to the welfare of producers and consumers of milk or cream, and of the public, temporary schedules of prices at which milk, cream, skim milk, buttermilk, chocolate milk or cottage cheese shall be bought and sold at wholesale and retail, or either, subject to the requirement that all such prices shall be just and reasonable.

"(c) The provisions for the judicial review of orders or regulations made under subsection (3) shall be as prescribed

in chapter 102 insofar as the provisions thereof are applicable."

It appears from the complaint that on the 21st day of May, 1935, the commission held a hearing and found that—

"a public emergency exists whereby the distribution and sale of milk and cream in the city of Milwaukee and the area adjacent thereto is subject to discriminatory, unfair and unreasonable methods of competition, resulting in unjust and unreasonable prices to the producer and jeopardizing payment for his product."

The commission thereupon revoked general order No. 34 and promulgated order No. 34g. That order by its terms prescribed the conditions upon which milk might be bought and sold in the metropolitan area of Milwaukee, fixed the price thereof, required certain reports to be made to the commission, and forbade the giving of rebates and other discriminatory practices. It is not necessary to set out the order in full, for the reason that the order itself is not attacked in this proceeding. Sec. 99.165 (3) (c) provides that the order must be reviewed in the manner therein provided, so that the order is not before the court in this action.

In addition to sec. 99.165, sec. 99.43 requires every dealer to procure a license, and provides in certain contingencies for the revocation of the license.

Secs. 99.165 and 99.43 are alleged to be unconstitutional: (1) Because they deny to the defendant the equal protection of the law; (2) that the defendant is by their operation deprived of his property without due process of law, and they are in violation of sec. 1, art. I, of the Wisconsin constitution, and the Fifth amendment and sec. 1 of the Fourteenth amendment to the United States constitution; and (3) that said sections represent an attempt to delegate legislative power to the commission in violation of sec. 1, art. IV, of the Wisconsin constitution, and that the enforcement of such

powers as are thereby unlawfully granted offend the Fifth amendment and that part of the Fourteenth amendment to the constitution of the United States already referred to.

The arrangement of defendant's brief makes it difficult for us to state in an orderly, concise way the contentions made by the defendant. We deduce therefrom the following: (1) The finding by the commission that an emergency exists as a matter of fact is a condition precedent to the exercise of powers conferred by sec. 99.165 upon the commission; (2) that a determination of whether or not an emergency exists is a function of the legislature, and power to make that finding cannot be delegated; that, if the power to make the finding may be delegated, then there is no sufficient criteria of what constitutes an emergency to be found in the act; (3) that the power conferred upon the commission is in fact a power to declare whether or not there shall be a law, and the power to make that determination may not be delegated by the legislature; (4) that the act is class legislation because it authorizes the regulation of prices in the interest of the producer instead of the general public; (5) that sec. 99.165 is unconstitutional because it is discriminatory, in that it is declared to be immediately operative in certain cities while in the smaller cities it may become operative only at the option of the dealers or producers in those communities; (6) that sec. 99.43 is invalid because dependent upon sec. 99.165, and, if sec. 99.165 be invalid, then both sections must fall; (7) that order No. 34g is invalid because the statute authorizing the making of the order is invalid.

Is the existence of an emergency a condition precedent to the exercise of the power conferred? In *State v. Dairy Distributors, Inc.*, 217 Wis. 167, 258 N. W. 386, the court there having under consideration sec. 99.165, said:

"The commission nowhere finds the facts upon which its right to exercise the authority conferred is made dependent. It does not find that a public emergency exists or that dis-

criminatory, unfair, or unreasonable methods of competition are resorted to which result in unjust or unreasonable prices to the producer; or that any practice indulged in eliminates or tends to eliminate competition. . . . No finding is made as to the jurisdictional facts which must exist as a condition of exercising the power delegated."

The legislature declared by sec. 99.165 (1) (a) that—

"the provisions of this section are made necessary by a public emergency existing since November 1, 1932, growing out of the present economic depression, the present financial condition of the farmer delivering milk to certain municipal markets, unfair methods of competition of certain dealers purchasing, receiving or handling milk in such markets, a condition seriously affecting and endangering the public welfare, health and morals, which continues to exist and has been aggravated by the great drought of 1934."

By sec. 99.165 (1) (d) it declared: "This section is enacted as temporary emergency legislation and that it shall terminate June 30, 1937."

Although the legislature has declared that the emergency situation sought to be dealt with is in existence, and that the act shall not terminate until June 30, 1937, it nevertheless imposed upon the commission the duty to make an inquiry, and, if upon such inquiry—

"the commission shall find that a public emergency exists, whereby the milk supply in any such cities, villages and towns is likely to be interrupted or impaired in quality to an extent affecting the public health or convenience, or whereby the distribution, sale or disposal is subject to discriminatory, unfair or unreasonable methods of competition, resulting in unjust or unreasonable prices to the producer or jeopardizing payment for his product, or the distribution, sale or disposal is subject to practices which will eliminate or tend to eliminate competition therein" the commission may make general or special orders, etc.

It is to be noted that the language of (3) (b) does not conform to the language of (1) (a). By (1) (a) three

things are found by the legislature to affect the public welfare, health, and morals: (1) Economic depression; (2) present financial condition of the farmer; (3) unfair methods of competition. To these three there is by (3) (b) added a fourth, practices which will eliminate or tend to eliminate competition. The facts which make legislative action necessary as found by the legislature are of equal dignity and importance. One is not dependent upon the other. All of them are declared to be such as affect the public welfare. In that respect (3) (b) is not clear.

A determination of the question presented requires an analysis of (3) (b). The defendant argues that the word "emergency" is used in (3) (b) in its narrow or limited sense as meaning an uncommon, sudden, unexpected happening which presents a sudden and unexpected occasion for action. *United States v. Sheridan-Kirk Contract Co.* (D. C.) 149 Fed. 809. It contends that, before the commission can act, it must find the existence of such a state of affairs. It is apparent that the term is used in this section in a much broader sense. The use of the adverb "whereby" is unfortunate. That word is defined as meaning "by or through which; by the help of which; in accordance with which" (Webster). It is not the equivalent of the conjunction "because," which means "by or for the cause that" (Webster).

It is our duty to construe the section as a whole and to assign such meaning to the various terms used in the section as accord with the legislative purpose. No doubt the term "emergency" has been subjected to great strain during recent years. If it does not cover a multitude of sins, it certainly answers a multitude of purposes. As a matter of fact, we are unable to discover that the term as used in this section means more than that if a state of affairs exists which requires action to the end that the evils complained of may be remedied, an emergency exists, and the commission is

authorized to proceed. The existence of the conditions named or any of them is sufficient to warrant the exercise of the power conferred. If the milk supply in any city or village is or is likely to be interrupted or impaired in quality, to the detriment of the public welfare, health, and morals of the community, an emergency exists in the sense in which that term is used in this section. The validity of the section is in no sense dependent upon the existence of an emergency, if that word be held to mean an uncommon, sudden, and unexpected happening which requires immediate action. We said in *Hanauer v. Republic Building Co.* 216 Wis. 49, 255 N. W. 136, 256 N. W. 784:

"To state that an emergency exists is merely another way of stating the existence of a great and pressing public need."

That is the meaning it has in sec. 99.165.

It is true, as has been said, that an emergency does not create power. It is equally true, however, that an emergency may disclose matters not theretofore brought to the attention of the legislature and emphasize the necessity of legislative action. It is certainly not true to say that the unhealthful and undesirable conditions created or disclosed by a great economic crisis subside with the crisis. If the existence of an emergency has resulted in a deterioration of the quality of milk delivered, has resulted in discriminatory, unfair, or unreasonable methods of competition, and practices have been resorted to which tend to eliminate competition, and resulted in injustice to the producer, it cannot be assumed that those practices will disappear even though trade indices may indicate that some phases of the economic crisis are passing.

When the commission finds the jurisdictional facts, the legislature has declared that the existence of the conditions so found is detrimental to the public welfare, health, and morals. That of itself constitutes a sufficient basis for the exercise by the legislature of the so-called police power. The

extent to which the legislature may go in the exercise of legislative power, or the commission may go in the exercise of power delegated to it, may be affected by the existence of a so-called emergency or of a particular state of facts. As was said in *Home Bldg. & Loan Asso. v. Blaisdell,* 290 U. S. 398, 54 Sup. Ct. 231:

"Emergency does not create power. It merely creates a condition which warrants the exercise of an already existing power."

In this case, the commission upon due notice and hearing, found the necessary jurisdictional facts as already set out, and was authorized to deal with the conditions disclosed by its investigation. It promulgated order No. 34g for that purpose. It was within its power to make a just and reasonable order to effectuate the legislative purpose. We shall not consider the terms of the order itself for the reason already stated.

The defendant argues at some length the proposition that the power conferred upon the commission with respect to making regulations relating to the sale and distribution of milk constitutes an invalid delegation of legislative power. It is considered that all of the contentions of the defendant in that respect are fully considered and answered in the decision of the so-called *Tavern Code Case, Petition of State ex rel. Attorney General,* 220 Wis. 25, 264 N. W. 633.

The defendant claims that sec. 99.165 is invalid because it applies to cities of the first, second, and third class and to cities of the fourth class having a population of at least five thousand, and to cities, villages, and towns adjacent to any city or village whose population is furnished by any dealer operating in such cities of the first, second, third, and fourth class. In support of this contention, the defendant relies very strongly upon the case of *State ex rel. Milwaukee S. & I. Co. v. Railroad Comm.* 174 Wis. 458, 183 N. W. 687. In that case the court had under consideration the so-called rent

law (ch. 16, Laws of Special Session 1920). That was an act also declared to be enacted as temporary emergency legislation. It provided that the railroad commission (now public service commission) might upon hearing determine the rents and charges to be fixed for the use and occupancy of property. By its terms it applied to counties having a population of two hundred fifty thousand or over. As is well known, the act in fact applied only to the county of Milwaukee. The court held that:

"It is a matter of common knowledge that the oppressive exactions denounced by the act are as objectionable in their effects upon the public in the smaller cities of the state as in the larger ones and that the evil produced no different conditions in the county of Milwaukee than in other counties of the state,"—

and held that the classification was invalid because discriminatory and because it denied to real-estate owners in the city of Milwaukee the equal protection of the law. In the sale and distribution of milk and its products, the conditions which obtain in cities of any considerable size are widely different than those which obtain in the smaller towns and villages. The basis of the classification would appear much more clearly if the act by its terms applied only to the cities of the first, second, and third class. However, the conditions which obtain in the smaller villages and towns where the buyer is personally acquainted with the dealer, and the products distributed are produced locally, are very different than those obtaining in more densely populated areas. We cannot say that the classification has no proper basis in reason. *Wisconsin Asso. of Master Bakers v. Weigle,* 167 Wis. 569, 168 N. W. 383. It is considered that the classification has a sound basis in reason and in fact and that the act is not discriminatory in that respect. We do not consider the provisions of the section applicable to communities of less than five thousand population, because, if they be held in-

valid they are separable and do not affect the validity of the act as a whole.

It is considered that the contention of the defendant that the law is invalid because the milk industry is not subject to regulation in exercise of the police power, and the further contention that price-fixing provisions are unconstitutional, are fully considered and disposed of in *Nebbia v. New York,* 291 U. S. 502, 54 Sup. Ct. 505, and *Hegeman Farms Corp. v. Baldwin,* 293 U. S. 163, 55 Sup. Ct. 7.

It is further argued that the act is invalid because it falls within the category of so-called class legislation. This argument is based upon the language used in sec. 99.165 (1) (a), where it is declared that the provisions of the section are made necessary—

"by a public emergency existing since November 1, 1932, growing out of the present economic depression, the present financial condition of the farmer delivering milk to certain municipal markets, unfair methods of competition of certain dealers purchasing, receiving or handling milk in such markets, a condition seriously affecting and endangering the public welfare, health and morals, which continues to exist and has been aggravated by the great drought of 1934."

The argument is that the act by its terms is declared to be for the betterment of the present financial condition of the farmer. In most cases when a legislature, in the exercise of the police power, creates a classification in a regulatory statute, some persons are benefited thereby and other persons may sustain a loss. Regulatory legislation is not subject to condemnation because as an incident to it benefits are conferred upon some class, if there is as a matter of fact an adequate basis for the classification adopted. The constitutionality of an act is not to be determined by its effect upon individuals as compared with one another, but depends upon whether or not there is a distinction between classes as classes, which justify legal discrimination between them. *Borgnis v. Falk*

*Co.* 147 Wis. 327, 133 N. W. 209; *Income Tax Cases,* 148 Wis. 456, 134 N. W. 673, 135 N. W. 164.

If as a result of the great drought and the financial depression unfair methods of competition are practiced in the production and distribution of milk, and the farmer is unable to produce a healthful product under present marketing conditions, and the public welfare, health, and morals are endangered by reason of these conditions, the industry thereby becomes subject to regulation. The legislature declared such conditions inimical to the public welfare. This court has no judicial notice as a matter of common knowledge that the conditions described by the legislature and found by the commission to exist do not as a matter of fact create conditions in cities having a population of five thousand or more which make the industry subject to regulation upon that basis and make it a proper basis of classification.

The defendant argues that the milk industry is not affected with a public interest. *New State Ice Co. v. Liebmann,* 285 U. S. 262, 52 Sup. Ct. 371. It is apparent that the term "affected with a public interest" is not susceptible of precise definition. In any event, a law that meets the requirements of due process is valid. If a regulatory law has a reasonable relation to a proper legislative purpose, and is neither arbitrary nor discriminatory, the requirements of due process are satisfied, and the law is not unconstitutional because of the subject matter with which it deals. *Nebbia v. New York, supra.*

The section under consideration deals with an industry subject to regulation under the law. It is neither arbitrary nor discriminatory. It does not appear that it was enacted to accomplish any ulterior or improper purpose, or for any purpose other than that set forth in the act. It cannot therefore be denounced as class legislation. *People v. Beakes Dairy Co.* 222 N. Y. 416, 119 N. E. 115.

The section is also criticized by the defendant on the ground that it does not conform with exactitude to the New York law under consideration in the *Nebbia Case, supra.* Exact conformity with that law of course would remove the question raised here out of the field of controversy. Failure to conform to that act, however, does not invalidate sec. 99.165. The validity of this section is to be tested, not by the New York law, but by constitutional provisions. Not being in conflict with these, it is valid, although not in conformity with the New York statute. The New York law does not set the uttermost limits to which a legislature may go in the regulation of the milk industry. Secs. 99.165 and 99.43 are valid and confer power upon the commission to proceed in accordance therewith, and the trial court correctly so held.

*By the Court.*—Order affirmed, and cause remanded for further proceedings according to law.

The following opinion was filed March 17, 1936:

PER CURIAM (*on motion for rehearing*). In support of its motion for rehearing, the defendant argues that the court did not pass upon its contention that the law was invalid because it established no standard in accordance with the rule in *Gibson Auto Co. v. Finnegan,* 217 Wis. 401, 259 N. W. 420, and *Petition of State ex rel. Attorney General (Tavern Code Authority),* 220 Wis. 25, 264 N. W. 633.

Sec. 100.03 (1) (a) provides:

"It is declared that the provisions of this section are made necessary by a public emergency existing since November 1, 1932, growing out of the present economic depression, the present financial condition of the farmer delivering milk to certain municipal markets, unfair methods of competition of certain dealers purchasing, receiving or handling milk in such markets, a condition seriously affecting and endangering the public welfare, health and morals, which continues to exist and has been aggravated by the great drought of 1934."

By sec. 100.03 (3) (b) the commission is required to find as a condition to exercising the power conferred: (1) That an emergency exists; (2) that the milk supply is likely to be interrupted or impaired to an extent affecting the public health or convenience; or (3) that discriminatory, unfair, or unreasonable methods of competition exist, resulting in unjust or unreasonable prices; or (4) that the distribution, sale, or disposal is subject to practices which tend to eliminate competition. These statutory provisions make clear what it is that is denounced by the law,—unfair methods of competition which result in the elimination of competition and unfair methods of competition which result in an unjust or unreasonable price. Manifestly, the orders of the commission made pursuant to the provisions of this section must be directed to the elimination of these declared abuses. This furnishes a sufficient standard to sustain the delegation of power made to the commission.

The motion for rehearing is denied without costs. Because the operation of the law is suspended by injunction, the clerk of this court is directed to remit the record forthwith.