STATE EX REL. DEPARTMENT OF AGRICULTURE, Respondent, vs. MARRIOTT and others, Appellants. [Four cases.]

*February 3—May 20, 1941.*

608

*Jacob S. Rothstein* and *Nathaniel D. Rothstein,* both of Milwaukee, for the appellants.

For the respondent there were briefs by *R. M. Orchard,* assistant attorney general, and *Gilbert F. Lappley* and *Fred M. Wylie,* both of Madison, of counsel, and oral argument by *Mr. Wylie* and *Mr. Lappley.*

A brief was also filed by *Karon & Weinberg* of Milwaukee, as *amicus curiæ.*

The following opinion was filed March 11, 1941:

MARTIN, J. The bill of exceptions applicable to each of the four actions contains the following stipulation:

"This stipulation is made upon agreement which is a part of the stipulation that the appellants will challenge on appeal only the constitutionality of the Milk Control Law because of discrimination, unlawful delegation of powers, and absence of legislative standards for fixing price, and also the other point of the unconstitutional enforcement of the law."

The first Milk Control Law was enacted as ch. 64, Laws of 1933. It was entitled: "Emergency regulation of the distribution of milk in certain municipalities." Sec. 1 provided:

"It is declared that the provisions of this section are made necessary by a public emergency existing since November 1, 1932, growing out of the present economic depression, the present financial condition of the farmer delivering milk to certain city markets, unfair methods of competition of certain dealers buying milk for resale in such city markets, which condition seriously affects and endangers the public welfare, health and morals. The provisions of this section shall apply to cities of the first, second and third class having municipal ordinances requiring that all pasteurized milk sold in such cities shall be pasteurized within the limits of the county in which said cities are located, and shall also apply to cities, villages, and to towns adjacent to any city or village, in the same county whose population is furnished with milk by any dealer or dealers operating generally in such cities of the first, second and third class. . . ."

The provision limiting the application of sec. 1 of ch. 64, Laws of 1933, to cities of the first, second, and third class having municipal ordinances relative to pasteurized milk was stricken from the act by an amendment; sec. 14 of ch. 470, Laws of 1933. The law as amended became sec. 99.165, Stats. 1933. It contained a severability clause. The law terminated two years after passage and publication. By amendment in 1935, sec. 336, ch. 550, Laws of 1935, sec. 99.165 became sec. 100.03, Stats. Sub. (1) (b) of this section provided that it should apply to cities of the first, second, and third class and to cities of the fourth class having a population of at least five thousand according to the last federal census, also to cities, villages, and towns adjacent to any city or village whose population is furnished milk by a dealer operating generally in such cities of the first, second, third, and fourth class. The 1935 act contained a severability clause. The law by its terms terminated June 30, 1937.

By ch. 369, Laws of 1937, secs. 100.03 and 100.04, Stats., were repealed, and sec. 100.03 was re-enacted. It had no territorial limitations. It was state-wide in its application. It was designated as emergency legislation and terminated not later than December 31, 1939. It contained the following severability clause (sec. 100.03 (12), Stats. 1937) :

"It is intended that each provision of this section, without regard to whether or not more than one provision is incorporated in the same subsection or subdivision, shall be severable, except provisions that necessarily are so dependent the one upon the other that the one cannot stand without the other; particularly, but without limitation, each exception, express or implied, is severable from each other provision, including each other exception; and if any exception be invalid, this section shall be in force without such exception; and if any provision or exception shall be invalid as to any person, thing or circumstance, the provision or exception shall be construed to except such person, thing or circumstance from its terms."

Sec. 100.03, Stats. 1937, was amended by ch. 512, Laws of 1939, effective October 17, 1939. This chapter did two things. First, it extended the life of sec. 100.03, Stats., two years; that is, it provides:

"(2) This section shall cease to be of force or effect when the department shall determine that economic unbalance or unemployment no longer so materially interferes with the ability to produce, to consume, to bargain, or to deal in the production or distribution of fluid milk in Wisconsin as to continue measurably to threaten results as recited in subsection (1), but in any event not later than December 31, 1941. The department's determination, to whatever effect, shall be in the form of a general order and may be reviewed as such and not otherwise. . . ."

It further provides:

"The provisions of this section shall not apply to towns, villages and cities of the fourth class, unless the same are located in a county containing a population of more than seventy thousand."

We will first consider whether the 1939 amendment to sec. 100.03, Stats., renders the statute unconstitutional under section 1 of the Fourteenth amendment to the United States constitution or section 1, article I of the Wisconsin constitution, because if the 1939 amendment is unconstitutional, the Milk Control Law by its specific provision (sub. (2) of sec. 100.03, Stats. 1937) expired not later than December 31, 1939. By ch. 512, Laws of 1939, the operation of sec. 100.03 was extended from December 31, 1939, to December 31, 1941. The chapter then provides that the provisions of sec. 100.03 shall not apply to towns, villages and cities of the fourth class unless the same are located in a county containing a population of more than seventy thousand. A substantially similar provision in the Trade Practice Standards Act was held unconstitutional in *State v. Neveau, ante,* p. 85, 294 N. W. 796, 296 N. W. 622, as setting up an improper classification. The unconstitutionality of the classification

under ch. 512, Laws of 1939, is virtually conceded by the state upon these appeals. The question is whether the 1939 act, being constitutional in so far as it extends the operation of the Milk Control Law and unconstitutional in so far as it seeks to impose new territorial limitations upon the act is severable in such a way as to save the valid extension features. While the matter is not free from difficulty, we conclude that it is severable. The question is, of course, whether that portion of the act containing the territorial limitations was so important an inducement to its passage as to lead to the conclusion that the legislature would not have extended the operation of the Milk Control Act without the limitations. In order to answer this question it is important to consider what in effect the legislature did in the portion of ch. 512, Laws of 1939, which extends the operation of the Milk Control Act. We consider this extension to be a species of re-enactment, and the effect is the same as though the existing law which expired on December 31, 1939, had been set out in full in ch. 512, Laws of 1939. Had this been done, the severability clause of the earlier act would have appeared in ch. 512. The fact that it does not so appear we deem immaterial, as there is here virtually an incorporation by reference.

The matter, therefore, comes down to this: That the legislature determined to extend the operation of an earlier act which contained a broad severability clause, and when, in addition to this extension, it amended the earlier law, it is a fair conclusion that the amendment was to be as subject to the severability clause as any of the other existing provisions of the extended law. In other words, in determining the severability of the 1939 law, we ought to consider the matter as though the extended law fully amended as to its territorial scope and containing its original severability clause had been fully set forth in the law of 1939. Under these conditions we think there would be little doubt as to the severability from the act of the invalid territorial limitation which we strike

down and a sustaining of the act on the basis of its original territorial scope.

While not strictly in point here, for the reason that we conclude that the severability clause of the 1937 law should be considered a part of the 1939 amendment (ch. 512, Laws of 1939) as though it had been fully set forth in said amendment, by way of analogy at least, there is applicable the rule that an amended statute is to be given the meaning that it would have had if it had read from the beginning as amended. See *State v. Local Board of Review*, 225 Iowa, 855, 283 N. W. 87, 92, and cases cited. See also 59 C. J. p. 1096, § 647, and cases under note 24, and *United States v. La Franca*, 282 U. S. 568, 576, 51 Sup. Ct. 278, 75 L. Ed. 551, 557.

Appellants contend that sec. 100.03 (5) (a), Stats., constitutes an unconstitutional delegation of legislative power to the Department of Agriculture because no proper standards have been set by the legislature. We consider that appellants' argument in this respect is ruled to the contrary by the decision of this court in *State ex rel. Finnegan v. Lincoln Dairy Co.* 221 Wis. 1, 265 N. W. 197, 265 N. W. 851, in which the constitutionality of the 1935 Milk Control Law was challenged on substantially the same grounds as urged in the instant case. That law was held valid. To the same effect see *Petition of State ex rel. Attorney General* (Tavern Code Authority Case), 220 Wis. 25, 264 N. W. 633.

Appellants further contend that they were denied the equal protection of the law by reason of the mode of administration of the Milk Control Act. At the trial, in support of this contention, they offered evidence to show that a certain farmer in Waukesha county had shipped fluid milk to the city of Milwaukee and was paid a flat price for it. No objection was made to the particular question and answer. The question was: "*Q*. And on what basis do you ship to them? *A*. I am paid by the Milwaukee Dairy Distributors a flat price." Then the witness was asked "*Q*. What do you get?"

to which counsel for the plaintiff objected as being immaterial. After hearing extended argument by counsel for the parties the court sustained the objection. From such transcript of the record as is contained in the bill of exceptions, we are of the view that the trial court did not err in excluding this evidence. If the operation of a valid law could be defeated by showing that in some instances other persons or parties violated the law, we fear that a general breakdown in law enforcement would follow. Those charged with the enforcement of the Milk Control Act cannot pursue all violators at the same time. In the instant cases there is no showing of nor any proper offer of proof to show an unconstitutional enforcement of the law.

While we differ with the trial court in its conclusion as to the constitutionality of the territorial limitations of the 1939 amendment, it does not necessitate any modification of the several judgments, therefore same must be affirmed.

*By the Court.*—Judgments affirmed.

FOWLER, J. (*dissenting*). I agree with the opinion of the court that the concluding sentence of sec. 1, ch. 512, Laws of 1939, stated in the opinion, p. 612, is unconstitutional. This sentence was incorporated in the act by amendment of the bill as first introduced. It was held in *State ex rel. Hickey v. Levitan,* 190 Wis. 646, 669, 670, 210 N. W. 111, and *Fitger Co. v. Kremer,* 199 Wis. 338, 341, 226 N. W. 310, that when an unconstitutional provision is so incorporated in an act, and the act would not have been passed but for the amendment, the act is invalid, notwithstanding that but for the amendment it would have been valid.

The mere fact that ch. 512, Laws of 1939, as a whole shows that the legislature intended that the existing milk-control statutes should not be applied to towns and villages and cities of the fourth class unless the same were situated in counties of seventy thousand population, demonstrates that the legis-

lature did not intend that those statutes should be applied throughout the state. The decision of the court makes this statute apply throughout the state contrary to the express declaration and intent of the legislature. In the *Hickey Case, supra,* p. 670, it is said, quoting from *Connolly v. Union S. P. Co.* 184 U. S. 540, 22 Sup. Ct. 431, 46 L. Ed. 679, the "logic of which the *Hickey* opinion declares to be uncontrovertible,"—

"Looking then at all the sections together, we must hold that the legislature would not have entered upon or continued the policy indicated by the statute unless agriculturalists and livestock dealers were excluded from its operation, and thereby protected from prosecution. The result is that the statute must be regarded as an entirety, and in that view it must be adjudged to be unconstitutional as denying the equal protection of the laws to those within its jurisdiction who are not embraced by the ninth section."

In the *Fitger Co. Case, supra,* p. 341, it is said of a like situation that the "history of the passage of the act leaves no room for such a conclusion [of severability]. As originally introduced it did not contain the exemption provision. That came in as an amendment to the original bill, and the court cannot say that it was not an inducement to the passage of the law."

Thus the legislative history of ch. 512, Laws of 1939, shows conclusively that the act would not have passed the assembly but for the incorporation of the unconstitutional provision by amendment. The act is therefore void in its entirety, just as were the acts involved in the two cases cited.

The opinion of the court attempts to avoid the effect of the incorporation of the unconstitutional provision by amendment by saying that the chapter was in effect a re-enactment of the existing milk-control statute, and re-enacted the severability provision of that statute, and that the severability provision of that statute saves the constitutional portion of

ch. 512, Laws of 1939. This, to my mind, is a manifest *non sequitur*. Ch. 512 being invalid in its entirety it did not re-enact the existing statute and therefore did not re-enact its severability provision.

It has been the habit of the legislature for several years past to attach a severability clause to all statutes containing several provisions as to the constitutionality of some of which there was doubt. If the legislature intended to save the first part of its section 1 by a severability clause why did it not add to it such a clause? This would have been an easy, plain, and habitual way of repelling the inference that the adding of the unconstitutional provision by amendment did not induce the enactment of the chapter. That the legislature did not use its usual tactics in enacting ch. 512, Laws of 1939, would seem to indicate intention that the chapter should stand or fall with the portion added by amendment. But whether the legislature so intended or not, ch. 512, for the reason stated, is void, and therefore did not re-enact anything.

I am authorized to state that Mr. Justice FRITZ concurs in this dissent.

A motion for a rehearing was denied, with $25 costs in one case, on May 20, 1941.