STATE EX REL. DEPARTMENT OF AGRICULTURE AND MARKETS, Appellant, vs. GAGNON, Respondent.

*February 4—May 20, 1941.*

For the appellant there were briefs by *R. M. Orchard,* assistant attorney general, and *Gilbert F. Lappley* and *Fred M. Wylie,* both of Madison, of counsel, and oral argument by *Mr. Wylie* and *Mr. Lappley.*

For the respondent there were briefs by *Thompson, Myers & Helm* of Racine, and oral argument by *Peter J. Myers*.

The following opinion was filed March 11, 1941:

FAIRCHILD, J.    Respondent is the owner of a farm located about nine miles from the city of Racine.   Racine county east of United States Highway No. 41 has by order been defined as a regulated market area for fluid milk, fluid cream, and incidental products.   Respondent is operating as a dealer in that market, selling only the milk and cream produced on her farm by her own herd.   She has been thus engaged for several years.   The products she produces and sells are of a quality required by local health regulations, and she is licensed as a dealer by the board of health of the city of Racine.   She has no license from the Department of Agriculture and Markets, however.

It is conceded that milk-control laws are generally constitutional, but respondent insists she need not comply with the license requirement of that act because, as she contends, she has an absolute right to market the milk products of her farm anywhere in the state, provided such "products are clean, wholesome and unadulterated and meet with the requirements of local health authorities."

Respondent states the issue in substance as follows: Is the Milk Control Act, as applied to a producer-distributor selling only the dairy products of his own farm, a constitutional act? Under the terms of sec. 100.03, Stats., a dealer is required to secure a license from the Department of Agriculture and Markets.   Is she a "dealer" within the meaning of the statute?

By engaging in a business subject to regulation in the public interest, the respondent places herself within the terms of the Milk Control Act.   The claim that by virtue of some rule of policy she is exempt from securing a state license, and the suggestion that such policy has been followed in

sec. 129.01 (1), Stats., is not well founded. That statute, under which one distributing or selling any agricultural product which he has grown in this state was excused from securing a license to hawk or peddle the same, does not control this situation. That statute related to and was for the purpose of regulating truckers, hawkers, and peddlers of growing agricultural products. Sec. 100.03 deals with a food supply that is produced and finally distributed to the consumer under very different conditions from that of articles ordinarily handled by hawkers and peddlers of truck and garden stuffs.

Although respondent owns her own cows, the product she sells and the method by which she disposes of it are both subject to the public regulation. When she establishes her route of customers and regularly supplies them, she places herself in the category of a dealer in a business which the government, with some reason therefor, has undertaken to regulate. She has assumed a position that makes her subject to regulation under the police power. The fact that she stands in the dual role of producer and dealer, in no way lessens her duties and liabilities in each character. The statute covers *all* "dealers" and she has become a dealer. *Baldwin v. Burdick,* 243 App. Div. 250, 276 N. Y. Supp. 675, 677.

Respondent apparently has no objections to local regulations. The Milk Control Law would be ineffective if any and all dealers producing milk with their own herds were free from regulation. We do not find that requiring respondent to conform to the licensing feature of the Milk Control Law is subjecting her to arbitrary, unjust, or discriminatory treatment. She elects to act as a dealer in distributing her products and can ask for no advantage over other dealers. The legislature has fixed a classification within constitutional limits, and the respondent in carrying on her enterprise of distributing milk and cream has entered into that class. Having undertaken the business of being a milk dealer,

respondent assumes not only the benefits of that position but also its consequent liabilities.

It is now well settled that distribution of milk to regular customers in quantities of ten or more quarts per day is a business subject to state licensing. *State ex rel. Department of Agriculture v. Marriott, ante,* p. 607, 296 N. W. 622; *State ex rel. Finnegan v. Lincoln Dairy Co.* 221 Wis. 1, 265 N. W. 197, 265 N. W. 851; *Nebbia v. New York,* 291 U. S. 502, 54 Sup. Ct. 505, 78 L. Ed. 940; *Hegeman Farms Corp. v. Baldwin,* 293 U. S. 163, 55 Sup. Ct. 7, 79 L. Ed. 259; *Highland Farms Dairy v. Agnew,* 300 U. S. 608, 57 Sup. Ct. 549, 81 L. Ed. 835.

In view of all that has been said in the milk-control cases preceding this and in which the regulation of milk-market areas has been challenged as unconstitutional, it is apparent that respondent's objection to the enforcement of the law is without foundation.

*By the Court.*—Order and judgment reversed, and cause remanded with directions to grant the relief prayed for by the plaintiff in its complaint.

A motion for a rehearing was denied, with $25 costs, on May 20, 1941.